UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
SIERRA CLUB, )
 )
        Plaintiff, )
 )
        v. )    Civil Action No. 11-1576 (RBW)
 )
LISA P. JACKSON, in her official capacity as )
Administrator, United States Environmental )
Protection Agency, et al., )
 )
        Defendants. )
_____)

## MEMORANDUM OPINION

The plaintiff, the Sierra Club, brought this action against Lisa P. Jackson in her capacity as the Administrator of the United States Environmental Protection Agency ("EPA"), as well as the EPA itself (together, "the EPA"), alleging unreasonable delay under Section 304(a) of the Clean Air Act, 42 U.S.C. § 7604 (2006), in responding to the plaintiff's request that the EPA develop computer models for measuring ozone particles. Complaint ("Compl.") ¶¶ 34–43. Currently before the Court is the Plaintiff's Motion for Attorney Fees and Costs Under the Clean Air Act, 42 U.S.C. § 7604(d) ("Pl.'s Mot."). Upon careful consideration of the parties' submissions, the Court concludes for the following reasons that the plaintiff's motion must be granted in part and denied in part.[1]

---

[1] In addition to the plaintiff's Complaint, the Court considered the following filings in rendering its decision: (1) the Plaintiff's Motion for Attorney Fees and Costs Under the Clean Air Act, 42 U.S.C. § 7604(d) ("Pl.'s Mot."); (2) the Memorandum in Support of Plaintiff's Motion for Attorney Fees and Costs Under the Clean Air Act, 42 U.S.C. § 7604(d) ("Pl.'s Mem.") and all attachments thereto; (3) the defendants' Opposition to Motion for Attorney's Fees and Costs of Litigation ("Defs.' Opp'n"); (4) the Reply Memorandum in Support of Plaintiff's Motion for Attorney Fees and Costs Under the Clean Air Act, 42 U.S.C. § 7604(d) ("Pl.'s Reply"); and (5) the Plaintiff's Notice of Supplemental Authority in Support of its Motion for Attorney Fees and Costs.

## I. BACKGROUND

The Sierra Club's complaint alleged that the EPA had unreasonably delayed in (1) responding to the Sierra Club's petition for rulemaking ("claim one") and (2) designating air quality computer models for ozone particles ("claim two"). Compl. ¶¶ 34–43. On January 4, 2012, the EPA responded to the Sierra Club's petition for rulemaking. Stipulation of Dismissal at 2, ECF No. 12. Accordingly, on January 16, 2012, the parties filed a stipulation dismissing claim one with prejudice and claim two without prejudice, id., and thus the only matter currently before the Court is what fees, if any, are due to the Sierra Club's attorneys, Pl.'s Mot. at 1. The EPA does not dispute that the Sierra Club is entitled to fees in this matter. Defs.' Opp'n at 1. The disagreement centers solely on how much compensation is reasonable.

The Sierra Club is primarily represented by the Law Office of Robert J. Ukeiley in Berea, Kentucky. Pl.'s Mot. at 1. The EPA argues that Mr. Ukeiley and his associates should be compensated based on the prevailing rates in Kentucky, where the legal work was performed. Defs.' Opp'n at 7. The EPA further argues that because claim two was dismissed without prejudice, the Sierra Club was not sufficiently successful on that claim to warrant attorney fees for time spent litigating that claim. Defs.' Opp'n at 17. On the other hand, the Sierra Club contends that Mr. Ukeiley's practice is national in scope and the rate should be calculated according to the Laffey index,[2] a tool for determining the prevailing rate in the Washington, D.C. area where the litigation took place. Pl.'s Mem. at 9. The Sierra Club also argues that the two

---

[2] The Laffey rate is the predominant method for calculating attorneys' fee rates in the Washington area and derives its name from Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354, 359 (D.D.C. 1983), aff'd in part, rev'd in part, 746 F.2d 4 (D.C. Cir. 1984).  The Laffey rate is calculated from a matrix based on attorney experience, Covington v. Dist. of Columbia, 57 F.3d 1101, 1105 (D.C. Cir. 1995), and is available at http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf.

claims are so intertwined that it is impossible to separate the time spent litigating them in the way that the EPA suggests.  Pl.'s Reply at 7.

In addition to Mr. Ukeiley's fees, the Sierra Club also seeks fees for work performed by Neil Levine, a Colorado attorney hired to work on the fee application itself.  Pl.'s Mem. at 16.  The EPA does not contest Mr. Levine's rates, and the parties have agreed on the number of hours of work for which he should be compensated.  Defs.' Opp'n at 18–19.  However, the EPA argues that his work is compensable only if the Sierra Club succeeds on its motion for fees.  Id.

In the final analysis, the Sierra Club seeks a total of $37,275.92[3] in attorney fees related to this litigation, Pl.'s Reply at 1, where as the EPA contends that the amount should be only $5,122, Defs.' Opp'n at 19.  The EPA does not dispute the $471.91 in costs claimed by the Sierra Club.  Pl.'s Reply at 1 n.2.

## II.  LEGAL ANALYSIS

The Clean Air Act allows citizens to bring suit to compel agency compliance with its statutory obligations.  42 U.S.C. § 7604(a).  Under the Clean Air Act, "the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate."  Id. § 7604(d).  In order to award attorney fees under the Clean Air Act, a court must engage in a two-step inquiry, determining first whether the party seeking fees is the prevailing party, and second, whether the requested fees are reasonable.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).  Here, the EPA does not contest that the Sierra

---

[3] The plaintiff seeks $12,361 for Mr. Ukeiley's fees, $17,968 for Mr. Levine's work on the fee motion and memorandum, $6,003 for Mr. Levine's work on the Reply, and $471.91 for filing costs.  Pl.'s Mot. at 1; Pl.'s Reply at 1 nn.1–2.

Club is at least a partially prevailing party within the meaning of § 7604(d), Defs.' Opp'n at 1, and so the Court confines its analysis to the reasonableness of the fees requests.

Generally, the "starting point" for calculating a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. The result is known as the Lodestar figure, and there is a "strong presumption" that it is reasonable and consistent with the purposes underlying fee-shifting provisions applicable to citizen suits. Delaware Valley, 478 U.S. at 565. Thus, to arrive at the appropriate amount of fees that should be awarded, the Court will use the Lodestar formula, which calls for the Court to first calculate the rate at which compensation will be awarded, and then determine the number of hours for which compensation is appropriate. Hensley, 461 U.S. at 433.

A.    Standard for Establishing Fees for the Services Provided By the Law Firm of Robert Ukeiley

    **1.   Hourly Rate**

Although the Clean Air Act provides for attorney fees, it does not provide guidance on how to calculate the reasonable rate at which the Court should compensate attorneys. Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 755, 757 (D.C. Cir. 1999) (per curiam). The general rule in this Circuit is that the "'reasonable hourly rate is that prevailing in the community for similar work.'" Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982) (citation omitted). Ordinarily, the "relevant community is the one in which the district court sits." Id. This rule can work in two ways; some "[h]igh-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there[, while other] attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated." Donnell, 682 F.2d at 251–52.

The District of Columbia Circuit does not follow the rule outlined in Donnell in cases where "out-of-jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory." See Davis Cnty., 169 F.3d at 758 (noting that although the forum-rate rule has been widely adopted, few courts have used it to justify awarding fees in this manner). As the Circuit has observed, limiting lawyers to fees less than they are accustomed to receiving decreases potential litigants' access to counsel, while limiting counsel to customary rates from their home market in instances where all work is performed in the home market does not have the same undesired negative effect. Id. at 759–60. And "awarding higher Washington rates would not make it harder for parties to find counsel, [but] it would produce windfalls inconsistent with congressional intent." Id. at 760. Accordingly, courts should calculate attorney fees based on the attorney's home jurisdiction where "virtually all of the work was performed in [the home jurisdiction]," where that jurisdiction is "the less expensive legal market," and "[t]he only time spent in Washington . . . was for the purpose of examining the administrative docket and participating in a short oral argument." Id. at 760.

Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether [the] plaintiff is represented by private or nonprofit counsel," Blum v. Stenson, 465 U.S. 886, 895 (1984), and even for "attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc). Fees for attorneys who charge reduced rates for non-economic reasons can be especially difficult to compute, Blum, 465 U.S. at 895 n.11, but evidence of "the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases" and "[r]ecent

fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work" are helpful in setting a reasonable rate, Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1325 (D.C. Cir. 1982). Thus, to assist the Court in making this calculation, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Hensley, 461 U.S. at 433; see also Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1325 ("An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award.").

The Sierra Club contends that because Mr. Ukeiley regularly files lawsuits in the District of Columbia, Laffey rates should apply. Pl.'s Mem. at 13. However, this case fits squarely into the Davis County exception, because as in Davis County, all work was performed in the significantly less expensive jurisdiction. See Davis Cnty., 169 F.3d at 760. And the exception is even more fitting in this case, because in Davis County, unlike here, counsel had to prepare for and participate in a motions hearing in the District of Columbia, but was nonetheless awarded the rates prevailing in his home jurisdiction of Utah. Id.

Further, the purpose of the Clean Air Act's citizen suit provision is to make sure that citizens have access to counsel by compensating attorneys at a reasonable rate for the work performed, not to "improve the financial lot of attorneys." Delaware Valley, 478 U.S. at 565. In this case, the work performed did not extend beyond drafting a complaint and engaging in settlement discussions—work that could have been performed by any number of attorneys charging Kentucky rates, see, e.g., Am. Canoe Ass'n v. City of Louisa, 683 F. Supp. 2d 480, 487–88 (E.D. Ky. 2010), and for which higher compensation rates are thus unnecessary. If the Court were not to apply the Davis County exception to the facts presented here, it is hard to

6

imagine when, if ever, the exception would apply.  The Court thus finds that it is appropriate to calculate Mr. Ukeiley's fees in accordance with rates applicable in Kentucky.

The Sierra Club has provided no evidence of the prevailing Kentucky rate.[4]  Instead, the plaintiff observes only that Mr. Ukeiley has never charged or been awarded Kentucky rates by a Kentucky court.  Pl.'s Mem. at 13.  Accordingly, the Court looks to "[r]ecent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work" in Kentucky.  Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1325.

The most recent decision by a Kentucky District Court awarding attorney fees under a similar environmental statute, the Clean Water Act, 33 U.S.C. § 1365(d) (2006), is American Canoe Ass'n, Inc. v. City of Louisa, which set the prevailing Kentucky rates at $300 per hour for partners, $150 per hour for associates, and $75 per hour for paralegals.  683 F. Supp. 2d at 488.  The Sierra Club does not find fault with the rates outlined in American Canoe, and argues only that those rates should not apply here.  Pl.'s Reply. at 3–4.  Because the plaintiff has failed to provide different or better evidence of the rates in Kentucky, the Court adopts the rates in American Canoe as the rates for calculating the attorney fees for Mr. Ukeiley's law firm in this case.

---

[4] The Sierra Club did provide evidence that its primary counsel, Mr. Ukeiley, regularly represents plaintiffs in suits against the EPA under the citizen suit provisions of the Clean Air Act, and noted that other members of this Court have awarded him fees under § 7604(d).  Ukeiley Decl. ¶ 15.  In one case, Mr. Ukeiley was awarded fees based on the rates in Kentucky, where Mr. Ukeiley's law firm is located.  Rocky Mountain Clean Air Action v. Johnson, No. 06-1992, 2008 WL 1885333, at *2 (D.D.C. Jan. 28, 2008).  In that case, former Judge James Robertson considered the fees awarded to lawyers in Kentucky between 2001 and 2007 under similar statutes to determine the appropriate rates.  Id. at *3 (applying the Davis County exception).  In another case, Mr. Ukeiley was awarded fees based on the Laffey rate.  MacClarence v. Johnson, 539 F. Supp. 2d 155, 158 (D.D.C. 2008).  There, Magistrate Judge John Facciola awarded Laffey rates and declined to follow the reasoning in Rocky Mountain Clean Air Action because the rates used in that case were outdated, were not based on environmental cases, and "there [was] no information available whatsoever as to whether such cases demanded a premium or a deduction in" Kentucky.  Id.  As explained supra, however, this Court agrees with the EPA that Laffey rates are inappropriate.  Davis Cnty., 169 F.3d at 759–60.  And unlike in MacClarence, this Court has recent information about the appropriate Kentucky rates for environmental litigation.  Am. Canoe Ass'n, v. City of Louisa, 683 F. Supp. 2d 480, 488 (E.D. Ky. 2010).

The Sierra Club contends that the rates should be calculated based on a national scale for other practitioners who, like Mr. Ukeiley, are environmental specialists. Pl.'s Mem. at 12 (citing Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs, 553 F.3d 487, 488 (7th Cir. 2009)). This Circuit, however, clearly contemplates a geographic element to the attorney fee award standard, rather than basing an award purely on the nature of the attorney's practice. See, e.g., Davis Cnty., 169 F.3d at 759 (contrasting local and "out of town" rates); Donnell, 682 F.2d at 251 (suggesting that the difficulty in determining the relevant community is complicated by "out of town" attorneys). The Court notes, however, that while geography is an important factor in determining the market rate, it is not the only relevant factor. Indeed, and as the Sierra Club argues, Pl.'s Reply at 5 n.3, an attorney's skill, experience, and reputation are also important. Each factor is sufficiently addressed by American Canoe, a case in which a District Court in Kentucky surveyed the Kentucky bar of environmental attorneys before setting the prevailing market rate, 683 F. Supp. 2d at 488.

The Court finds the Sierra Club's argument that an award based on Laffey rates would not constitute a windfall to be similarly unavailing. Where an attorney seeks fees pursuant to an attorney fee provision in a statute, evidence of actual rates paid by paying clients is probative of the reasonable rate, but is not determinative. Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1325. In other words, the rates that an attorney receives from paying clients do not alone establish the appropriate rate. Rocky Mountain Clean Air Action, No. 06-1992, 2008 WL 1885333, at *3 (D.D.C. Jan. 28, 2008) (citing Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1326 (observing that a high rate paid for an occasional "fortunate" case does not alone set the appropriate market rate)). The EPA states, and the Sierra Club does not deny, that "[a]t most," the Sierra Club "[has] establishe[d] the [Laffey] rate [as the rate] that [Mr. Ukeiley] charged [to

paying clients] for 183 hours spread between 2003 and 2007." Defs.' Opp'n at 11. Moreover, the low number of hours billed to paying clients represents too small a fraction of the total volume of Mr. Ukeiley's practice for the Court to rely on those rates as proof of the rate that should be awarded by the Court.

### 2. Compensable Hours

Before calculating the total sum awarded for Mr. Ukeiley's work, the Court must determine the correct number of hours for which he and other members of his law firm can be compensated. As noted the complaint consisted of two claims, one of which was dismissed with prejudice and the other without prejudice. Defs.' Opp'n at 3. The Sierra Club seeks compensation for counsel's time spent working on the entire matter, while the EPA seeks a 50% reduction because the Sierra Club could still pursue the claim dismissed without prejudice in the future. Id. at 17.

To be awarded fees under the citizen's suit provision of the Clean Air Act, a party must have "some success on the merits." Ruckelshaus v. Sierra Club, 463 U.S. 680, 682 (1983). Being eligible for fees, however, does not mean that the plaintiff is "eligible for fees on all claims it made before the court." Sierra Club v. EPA, 769 F.2d 796, 801 (D.C. Cir. 1985) (emphasis in original). When, in a single lawsuit, a plaintiff brings "distinctly different claims for relief that are based on different facts and legal theories . . . , work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." Hensley, 461 U.S. at 434-35 (internal quotation marks omitted); see also Sierra Club, 769 F.2d at 801 ("A plaintiff should not be able to force his opponent to pay for the legal services involved in bringing groundless claims simply because those unsuccessful claims were brought in a lawsuit that included successful claims."). However, some claims may "involve a common core of facts

9

or will be based on related legal theories." Hensley, 461 U.S. at 435; F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 599 (D.C. Cir. 1996) (finding two claims related where each "rested on similar arguments"). In such cases, counsel's "time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435. Lawsuits meeting this description "cannot be viewed as a series of discrete claims." Id.

The Sierra Club seeks compensation for Mr. Ukeiley's law firm for 41.2 hours of work, including 14.3 hours for Mr. Ukeiley, 24.3 hours for his law fellows,[5] and 2.6 hours for his paralegal. Declaration of Rober[t] Ukeiley in Support of Plaintiff's Motion for Attorney Fees and Costs ("Ukeiley Decl.") ¶¶ 18–24. The EPA argues that because (1) the Sierra Club was unsuccessful in litigating one of its claims, and (2) the Sierra Club's attorneys' "time descriptions" of services rendered are "too cursory to allow the identification of the hours associated with each claim," the Court should discount 50% of the time claimed. Defs.' Opp'n at 17–18.

The Court is not persuaded that the two claims are distinct enough to warrant a reduction in the number of compensable hours. Both of the Sierra Club's claims involved a common set of facts and were brought under the same provision of the Clean Air Act. Compl. ¶¶ 34–42. And the goal in asserting each claim was the same: to spur the EPA to ultimately "specify air quality models" as required by the Clean Air Act. Pl.'s Reply at 7. "The fact that one of the plaintiff['s] claims could have achieved the result sooner than the other does not make the claims unrelated." Am. Lands Alliance v. Norton, 525 F. Supp. 2d 135, 147 (D.D.C. 2007). The Court therefore finds that the claims "cannot be viewed as a series of discrete claims." Hensley, 461 U.S. at 435.

---

[5] Mr. Ukeiley refers to his "associate" attorneys as "fellows." Ukeiley Decl. ¶ 7.

Accordingly, the Court will calculate the fees for Mr. Ukeiley's law firm for all 41.2 hours of work claimed.

As to the attorneys' time descriptions, they sufficiently detail the tasks counsel performed.  See Ukeiley Decl., Exhibits A–D (Itemizations of Attorney Hours) (detailing documents that were drafted and reviewed, as well as content of specific emails).  And given the interrelatedness of the two claims as discussed above, the Court finds it irrelevant that the time descriptions do not identify the specific claim associated with each individual task.

### 3. Attorney Fees Awarded for the Services Provided by the Robert Ukeiley Law Firm

Using the prevailing Kentucky rates adopted in American Canoe, 683 F. Supp. 2d at 488, the award for the Robert Ukeiley Law Firm is as follows:

|  | **Hours** | **Rate** | **Fee** |
|---|---|---|---|
| Robert Ukeiley | 14.3 | $300 | $4,290 |
| Law Fellows | 24.3 | $150 | $3,645 |
| Paralegal | 2.6 | $75 | $195 |
| **TOTAL:** |  |  | **$8,130** |

A fee award of $8,130.00 is therefore made to the Sierra Club as compensation for the services provided by Mr. Ukeiley's law firm.

**B.     "Fees for Fees" Request for Neil Levine's Services**

A party may include in its request for attorney fees the additional fees incurred in preparing the fee motion—known as "fees for fees." INS v. Jean, 496 U.S. 154, 162 (1990); Sierra Club, 769 F.2d at 811.  Where a party's motion for attorney fees is successful, the party is entitled to recover fees for fees.  Sierra Club, 769 F.2d at 801–02.  However, where a party "lose[s] on any issues unrelated to the successful claims . . . [courts] must be extremely reluctant to award fees for time expended on those unsuccessfully raised issues." Id. at 802.  This is true not only of fees awarded with respect to the underlying litigation, Hensley, 461, U.S. at 436–37, but also of fees incurred in pursuing fees for the underlying litigation, Jean, 496 U.S. at 163 n.10 ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").  A party seeking fees for fees "should not receive fees for the time spent defending" aspects of the fee application that were unsuccessful.  Id.

    **1.  Hourly Rate**

The fees for fees request here stems from work performed by Neil Levine, whose only involvement in this action was drafting and filing the fee motion currently before the Court.  Pl.'s Mem. at 19.  Mr. Levine works in Denver, Colorado, and regularly commands an hourly rate of $400 per hour.  Declaration of Neil Levine in Support of Plaintiff's Motion for Attorney Fees and Costs ¶¶ 1, 10.  The EPA concedes that his hourly rate is not sufficiently different from the Laffey rate of $435 per hour to trigger the Davis County exception, Defs.' Opp'n at 18, and thus the Court will calculate Mr. Levine's fees using the Laffey rate.

    **2.  Compensable Hours**

The EPA contends that Mr. Levine's claim of 33.8 hours of compensable work is excessive and has thus recommended a 5% reduction to account for the time that he spent

familiarizing himself with the case. Defs.' Opp'n at 18–19. The plaintiff has agreed to that reduction, Pl.'s Reply at 10, which reduces the compensable hours sought by Mr. Levine to 32.11 hours.

The EPA further contends that Mr. Levine should receive fees for fees only if the Sierra Club has successfully argued its position about the appropriate fees for Mr. Ukeiley's law firm. Defs.' Opp'n at 18–19. As discussed above, the Court agrees with the Sierra Club on the issue of compensable hours but disagrees as to the appropriate rate for Mr. Ukeiley's services. Because the Sierra Club's fee arguments were partially successful, the Court also agrees that Mr. Levine should receive at least some of his fees. Sierra Club, 769 F.2d at 801–02. However, because courts "must be extremely reluctant to award fees for time expended on . . . unsuccessfully raised issues," id. at 802, the Court must reduce the number of compensable hours for Mr. Levine's work on the motion.

The motion as a whole ultimately raises four issues: (1) the number of compensable hours for Mr. Ukeiley and his law firm; (2) the rates for Mr. Ukeiley and his law firm; (3) the number of compensable hours for Mr. Levine; and (4) the rates for Mr. Levine. Given that the Sierra Club has been successful on only 50% of these issues—namely, the number of compensable hours for Mr. Ukeiley and the rates for Mr. Levine—the Court finds that it is reasonable to reduce the number of compensable hours for Mr. Levine by 50%, for a total of 16.05 hours.

### 3. Attorney Fees Awarded for Neil Levine's Services

In accordance with the above analysis, the Court calculates Mr. Levine's fee based on 47.5% of the requested hours recorded, which represents the 5% reduction agreed upon by the parties and the further 50% reduction imposed by the Court, at the Laffey rate. The Sierra Club is awarded fees to cover Mr. Levine's services as follows:

|  | **Hours** | **Rate** | **Fee** |
|---|---|---|---|
| Neil Levine | 16.05 | $435 | $6,981.75 |

A fees award of $6981.75 is therefore made to the Sierra Club as compensation for the services provided by Mr. Levine.

### III. CONCLUSION

For the foregoing reasons, the Sierra Club's motion for an award of attorney fees is granted in part and denied in part. Specifically, the Court awards the Sierra Club a total of $15,583.71 in attorney fees and costs. This award represents $471.96 in costs, which are not disputed by the EPA, Pl.'s Reply at 1 n.2, $8,130.00 in attorney fees for services provided by Mr. Ukeiley's law firm, and $6,981.75 for Mr. Levine's services.

SO ORDERED this 4th day of March, 2013.[6]

REGGIE B. WALTON
United States District Court Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.